KEN NAGY (I.S.B. No. 6176)
ATTORNEY AT LAW
P.O. Box 164
Lewiston, Idaho 83501
Telephone: (208) 301-0126
Facsimile: (888) 291-3832
E-mail: knagy@lewiston.com

ATTORNEY FOR PLAINTIFF

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| INTERMOUNTAIN FAIR HOUSING COUNCIL, INC., | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) |
| HAYDEN LAKE RECREATIONAL WATER AND SEWER DISTRICT, a political subdivision of the State of Idaho, | ) ) ) ) |
| Defendant. | ) ) ) |

CASE NO. CV ___11-284_____

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff Intermountain Fair Housing Council, Inc. and for a cause of action against the Defendant Hayden Lake Recreational Water and Sewer District, states and alleges as follows:

<u>NATURE OF THE ACTION</u>

1.  This is an action brought by the above-named Plaintiff for declaratory judgment, permanent injunctive relief and damages on the following bases:

VERIFIED COMPLAINT AND                    1
DEMAND FOR JURY TRIAL

a.  Fair Housing Act, 42 U.S.C. §3601 et seq. (hereinafter "FHA"), and in particular:

i.  Refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford equal opportunity to use and enjoy a dwelling in violation of 42 U.S.C. §3604(f)(3)(B);

ii.  Discrimination in the sale or rental, or otherwise made unavailable, a dwelling because of "handicap" in violation of 42 U.S.C. §3604(f)(1);

iii.  Discriminatory terms, conditions or privileges in the sale or rental of a dwelling because of "handicap" in violation of 42 U.S.C. §3604(f)(2);

iv.  Making, printing or publishing a notice or statement with respect to the sale or rental of a dwelling that indicates a preference, limitation or discrimination based on "handicap" in violation of 42 U.S.C. §3604(c); and

v.  Interference, coercion or intimidation, 42 U.S.C. §3617.

b.  Fair Housing Regulations, 24 C.F.R. §100 et seq.

## JURISDICTION AND VENUE

2.  This Court has jurisdiction over this action pursuant to 42 U.S.C. §3613 and 28 U.S.C. §§1331, 1332, 1337, 1343 and 2201.  The amount in controversy exceeds $75,000 exclusive of interests and costs.  Venue is proper in this District in that the claims alleged herein arose in the City of Hayden, County of Kootenai, State of Idaho.

## PARTIES

3.  The Plaintiff Intermountain Fair Housing Council, Inc. (hereinafter "the Plaintiff" or "IFHC") is a private, nonprofit corporation organized under the laws of the State of Idaho with

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

2

its principal place of business at 350 North 9th Street, Suite M-100, Boise, Idaho 83702.  Its mission is to advance equal access to housing for all persons without regard to race, color, sex, religion, national origin, familial status, or disability (the term "handicap", as that term is used and defined in the FHA, is used herein interchangeably with the term "disability").  The Plaintiff serves housing consumers through, among other things, education on the fair housing laws and assistance with complaints.

4.   The Defendant Hayden Lake Recreational Water and Sewer District (hereinafter "the Defendant"), is a political subdivision of the State of Idaho.  Its principal place of business is 9393 North Strahorn Road, Hayden, Idaho 83835.  The Defendant is a recreational water and sewer district organized and existing under the laws of the State of Idaho and provides sewer services to a group home located at 3265 East St. James Avenue, Hayden, Idaho 83815 which is owned and operated by By the Lake Assisted Living Homes, LLC (hereinafter "By the Lake facility"), as well as a group home located at 1921 East Hayden View Drive, Coeur d'Alene, Idaho 83815, which is owned and operated by Haydenview Cottage Assisted Living (hereinafter "Haydenview Cottage facility").  The By the Lake facility and the Haydenview Cottage facility are "dwellings", as that term is defined at 42 U.S.C. §3602(b) and are therefore subject to the protections and requirements of the FHA.

<u>STANDING OF PLAINTIFF</u>

5.   The Plaintiff has suffered damages as the result of the Defendant's actions and omissions, including the diversion of the Plaintiff's past and future resources, lost economic opportunity, and the frustration of the Plaintiff's mission.

6.   The Plaintiff's mission, as described above, has been frustrated by the Defendant's practices because the Defendant's violations of the FHA communicate to housing consumers and

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

3

housing providers that discriminatory practices are permissible and that correctional remedies are not available, thereby hampering Plaintiff's efforts to educate the public on fair housing issues and to advance equal access to housing.

7.  The Plaintiff's mission has further been frustrated as the Defendant's violations of the FHA have reduced the pool of non-discriminatory rental housing available to tenants in the State of Idaho.

8.  In order to counteract the frustration of the Plaintiff's mission, the Plaintiff has had to devote significant resources to identify, investigate, document and take action to correct the Defendant's violations of the FHA, including but not limited to the incursion of litigation expenses.  As a result, the Plaintiff has actually diverted resources from other fair housing-related activities, including fair housing education and enforcement activities throughout the State of Idaho and the surrounding region.  Furthermore, the Plaintiff will necessarily incur additional expenses in the future to counteract the lingering effects of the Defendants' violations of the FHA through the monitoring of the Defendants' activities, publication and advertising costs, and the sponsorship of educational activities.

9.  As a direct result of the Defendant's actions and omissions as described below, the Plaintiff is an "aggrieved person", as that term is defined by the FHA.  42 U.S.C. §3601(i).  The Plaintiff has suffered and continues to suffer significant and irreparable loss and injury, and has sufficient standing to bring this action before this Court.

<u>GENERAL ALLEGATIONS</u>

10.  The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-9 above.

VERIFIED COMPLAINT AND            4
DEMAND FOR JURY TRIAL

11.  The By the Lake facility is a 13-bed, privately-owned group home which houses on average 9-10 elderly residents, all of whom are handicapped, as that term is defined by the Fair Housing Act at 42 U.S.C. §3602(h).  The By the Lake facility is owned by By the Lake Assisted Living  Homes, LLC, which is owned by Larry and Kathleen Chmura (hereinafter "Chmuras").  The Chmuras hold the title to the real property on which said group home is situated.

12.  The By the Lake facility was constructed in 1996.  The building permit, on which the Defendant signed off, acknowledges that the occupancy load for the facility was 17.  Similarly, the certificate of occupancy issued in February of 1997 acknowledges that occupancy load and classifies the facility as a single family residence.  Since 1997, the property has operated as a group home for handicapped adults, mostly the elderly suffering from various forms of dementia.

13.  The By the Lake facility was purchased in 2006 by By the Lake Assisted Living Homes, LLC and continued its operation as a group home.

14.  At the time the Defendant signed off on the building permit for the By the Lake facility in 1996, it assigned the use as single-family and elected to charge a capitalization fee and O&M rates identical to other single family residential users.  The permit to hook up to the sewer system reserved to the Defendant the right to reevaluate actual sewer usage in one year and assess additional capitalization fees and O&M rates if warranted.  The Defendant made no adjustments to said fees and charges between 1997 to 2010.

15.  The Haydenview Cottage facility is an 8-bed, privately-owned group home which currently houses 6 elderly residents, all of whom are handicapped, as that term is defined by the Fair Housing Act at 42 U.S.C. §3602(h).  The Haydenview Cottage facility is owned by Haydenview Cottage, LLC, which is owned by Rebecca Nixon and her husband, Joseph Skala.

Title to the real property on which the Haydenview Cottage facility operates its group home is vested in Rebecca Nixon.

16. The Haydenview Cottage facility was constructed as a single-family residence some time before 1990.  However, since the mid-1990s, the property has been a group home for handicapped adults, mostly the elderly suffering from various forms of dementia.  The Haydenview Cottage facility was purchased in March of 2005 by Haydenview Cottage, LLC and continued its operation as a group home.

17. Since the time the Haydenview Cottage facility began to operate as a group home, it was assessed sewer fees and rates by the Defendant as a single-family residence, in compliance with Idaho law, which defines a "single family dwelling" as "any home in which eight (8) or fewer unrelated mentally and/or physically handicapped or elderly persons reside."  Idaho Code §67-6531.

18. By the Lake Assisted Living Homes, LLC received a letter dated the 29th day of March, 2010 (copy attached hereto as "Exhibit A") from the Defendant's attorney which indicated that the By the Lake facility would be regarded as a "commercial use" and that its sewer rates would be greatly increased by applying the calculation "attributed to substantially similar facilities, i.e., a nursing home or a hospital."  As a result, the Defendant demanded an additional capitalization fee of $66,600 and advised that the By the Lake facility's sewer rates (monthly O&M charges) were being increased 7.4 times higher than other single family residences.  The Defendant also imposed back charges in the amount of $7,992.00 for past O&M fees, for a total owing to the Defendant of $74,592.00.

19. The Haydenview Cottage facility also received a letter dated the 29th day of March, 2010 from the Defendant's attorney which indicated that the Defendant regards the Haydenview

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

6

Cottage facility as a "commercial use" and that its water and sewer rates would be greatly increased by applying the calculation "attributed to substantially similar facilities, i.e., a nursing home or a hospital."  As a result, the Defendant demanded an additional capitalization fee of $41,400 and advised that the Haydenview Cottage facility 's sewer rates (monthly O&M charges) were being increased 4.6 times higher than other single family residences.  The Respondent also imposed back charges in the amount of $6,624.00 for past O&M fees, for a total owing to the Defendant of $48,024.00.

20.  The letters from Defendant's attorney to the By the Lake facility and the Haydenview Cottage facility referenced above demanding payment of additional capitalization and O&M charges and threatening legal action, including possible foreclosure, if payment was not forthcoming was the first notice that said facilities received that indicated that the Defendant was even considering adjusting their sewer rates.

21.  Similar demand letters from the Defendant were contemporaneously sent to other group home facilities.  The Defendant has singled-out group homes for such treatment, stating that the Defendant was taking such action because it had "recently conducted a review of all licensed assisted care facilities within the boundaries of the District."  The Defendant has not similarly considered sewer rates with regards to owner occupied single family residences or single family residences rented to others for profit.

22.  In imposing the above-described fees on the two facilities at issue, the Defendant understood that the economics of providing housing for disabled individuals funded largely by Medicaid would force the two victims and others facilities similarly situated out of business.

23.  The imposition of such fees constitutes disparate treatment on the basis of "handicap" and has a disparate impact on handicapped persons, in violation of the Fair Housing

VERIFIED COMPLAINT AND                         7
DEMAND FOR JURY TRIAL

Act.  42 U.S.C. §3604(f).  Threatening the two victims listed herein with legal action and possible loss of its facility constitutes "interference, coercion or intimidation" in violation of the Fair Housing Act.  42 U.S.C. §3617.

24.  The Defendant's demands for additional fees are inconsistent with the applicable local ordinance which allows for adjustments of capitalization fees and O&M charges only when the property has undergone a "substantial change" in use.  Ord. No. 89-2.  The Defendant has ignored repeated requests from the two victims through their legal counsel that it identify what "substantial change" in use occurred given that the two facilities at issue herein have been operated as group homes for a significant period of time with similar numbers of residents.

25.  By singling out group homes for such scrutiny and treatment, the Defendant has also violated Idaho law, which provides that "[n]o local ordinance or local restrictions shall be applied to or required for a residential facility which serves eight (8) or fewer mentally and/or physically handicapped or elderly persons and is supervised as required in section 67-6531, Idaho Code, which is not applied to or required for a single family dwelling in the same zone." I.C. §67-6532.

26.  In response to the above-described actions of the Defendant, both the By the Lake facility and the Haydenview Cottage facility requested reasonable accommodations dated the 8th day of June, 2010 pursuant to the FHA from the Defendant that their group homes be treated as single family residences for purposes of assessing sewer charges.

27.  The Defendant refused to grant the two facilities' reasonable accommodation requests by letters dated the 6th day of July 2010 and the 26th day of August, 2010.  Instead, the Respondent filed a Petition for Declaratory Judgment in Idaho state court on the 21st day of September, 2010 against the two facilities at issue herein and other related parties.  The filing of

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

a lawsuit against the two victims listed herein also constitutes "interference, coercion or intimidation" in violation of the FHA.  42 U.S.C. §3617.

28.  As the result of the Defendant's actions as described above, both the By the Lake facility and the Haydenview Cottage facility made complaints to the Plaintiff.  The Plaintiff has provided extensive counseling to the two facilities at issue herein, has investigated their complaints and has determined that the Defendant has violated the facilities' and their residents' fair housing rights.

29.  As a direct consequence of the violations in which the Defendant has engaged, the two facilities at issue herein and their owners have suffered embarrassment, humiliation, inconvenience and emotional distress.

30.  As a direct consequence of the complaints that were filed by the By the Lake facility and the Haydenview Cottage facility, the Plaintiff has suffered significant and irreparable loss and injury.

<u>COUNT ONE—DISCRIMINATION ON THE BASIS OF "HANDICAP"</u>

31.  The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-30 above.

32.  The Defendant has refused to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford equal opportunity to use and enjoy a dwelling.  42 U.S.C. §3604(f)(3)(B).  Such conduct is willful and intentional, and exhibits reckless disregard for the civil rights of the individuals at issue herein.

33.  The Defendant has discriminated in the sale or rental of, and otherwise made unavailable and denied, a dwelling on the basis of "handicap".  42 U.S.C. §3604(f)(1).  Such

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

9

conduct is willful and intentional, and exhibits reckless disregard for the civil rights of the individuals at issue herein.

34.  The Defendant has discriminated in the terms, conditions and privileges of the sale or rental of a dwelling, and the services and facilities in connection therewith, on the basis of "handicap".  42 U.S.C. §3604(f)(2).  Such conduct is willful and intentional, and exhibits reckless or callous indifference for the rights of the individuals at issue herein.

<u>COUNT TWO—DISCRIMINATORY NOTICE OR STATEMENT</u>

35.  The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-34 above.

36.  The Defendant has made, print or published a notice or statement with respect to the sale or rental of a dwelling that indicates a preference, limitation and discrimination on the basis of "handicap".  42 U.S.C. §3604(c).  Such conduct is willful and intentional, and exhibits reckless or callous indifference for civil rights of the individuals at issue herein.

<u>COUNT THREE—INTERFERENCE, COERCION OR INTIMIDATION</u>

37.  The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-36 above.

38.  The Defendant has engaged in coercion, intimidation or interference in the exercise or enjoyment of rights granted by 42 U.S.C. §§3603 and 3604.  Such conduct is willful and intentional, and exhibits reckless or callous indifference for the rights of the individuals at issue herein.

<u>DAMAGES</u>

39.  The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-38 above.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

**KEN NAGY**
**Attorney at Law**
Lewiston, Idaho

40. As the result of the actions and conduct of the Defendant, as described above, the Plaintiff has suffered significant and irreparable loss and injury.

41. The Plaintiff is an "aggrieved person[s]", as defined in 42 U.S.C. §3601(i), and is an intended beneficiary of the protections and requirements of the statutes, laws and regulations referenced above.

42. The Plaintiff has suffered actual damages as a result of its out-of-pocket expenses and past diversion of its resources, as described above and in the attached "Appendix A", in the amount of $9,511.06, which continue to accrue.

43. The Plaintiff has suffered actual damages as a result of the future diversion of its resources, as described above and in the attached "Appendix A", in the amount of $5,500.00.

44. The Plaintiff has suffered actual damages as a result of lost economic opportunity, as described above and in the attached "Appendix A", in the amount of $1,000.00.

45. The Plaintiff has suffered actual damages as a result of the frustration of its mission, as described above and in the attached "Appendix A", in the amount of $5,757.63.

46. In addition to the injuries suffered by the Plaintiff, the Defendant has also caused significant and irreparable loss and injury to a number of identified and as-of-yet unidentified persons, including the By the Lake facility and the Haydenview Cottage facility, as described above.

47. Said identified and as-of-yet unidentified victims are "aggrieved person[s]", as defined in 42 U.S.C. §3601(i), and are intended beneficiaries of the protections and requirements of the statutes, laws and regulations referenced above.

48. All victims of the Defendant's actions and conduct should be identified and compensated through a Victims' Compensation Fund.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

49.  A Victims' Compensation Fund should be established in the amount to be determined to compensate identified and as-of-yet unidentified victims of the Defendant's discriminatory conduct from which such victims should be compensated.

50.  Said Victims' Compensation Fund should be established and administered as follows:

a.  The Plaintiff shall be assigned the task of managing and administering the Victims' Compensation Fund.  The Plaintiff shall be compensated for all time spent administering said Fund at the rate of $45.88 per hour.  The Plaintiff shall keep detailed records of all tasks engaged in and shall submit copies of said records to the Court and the Defendant on a monthly basis.

b.  Within thirty (30) days of the entry of an order by this Court creating a Victims' Compensation Fund, the Defendant shall deposit in an interest-bearing escrow account the total sum as determined by applying the calculation set forth in the attached Appendix B.

c.  Any interest accruing to such Victims' Compensation Fund shall become a part of the fund and be utilized as set forth herein.

d.  Within fifteen (15) days after the Defendant deposit funds in the Victims' Compensation Fund, the Plaintiff shall publish a Notice to Potential Victims of Housing Discrimination (hereinafter "Notice") in at least five daily newspapers serving the main population centers of the State of Idaho informing readers of the availability of compensatory funds.  The form and content of the Notice shall be approved by the Court at the time of the entry of the Court's order establishing the Victims' Compensation Fund.  The Notice shall be no smaller than three columns

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

12

by six inches and shall be published on three occasions in each newspaper.  The publication dates shall be separated from one another by at least 21 days, and at least two of the publication dates shall be a Sunday.  The Plaintiff shall send a copy of the Notice prior to each and every publication date to each of the following organizations: (1) Living Independent Network Corp. (LINC), 2500 Kootenai Street, Boise, Idaho 83705; (2) Co-Ad, Inc., 4477 Emerald Street, Suite B-100, Boise, Idaho 83706; Disability Action Center, 124 East Third Street, Moscow, Idaho 83843; and (4) Living Independently for Everyone (LIFE), P.O. Box 4185, 640 Pershing Avenue, Suite 7, Pocatello, Idaho 83201.

e.   Within thirty (30) days of the entry of an order by this Court creating a Victims' Compensation Fund, the Plaintiff shall send by first-class mail, postage prepaid, a copy of the Notice to each tenant who currently resides or who resided at any time at the subject property.

f.   Nothing in this section shall preclude the Plaintiff from making its own additional efforts at its own expense to locate and provide notice to potentially aggrieved persons.

g.   Allegedly aggrieved persons shall have one hundred-twenty (120) days from the date of the entry of an order by this Court creating a Victims' Compensation Fund to contact the Plaintiff in response to the Notice.  The Plaintiff shall investigate the claims of allegedly aggrieved persons and, within one hundred-eighty (180) days from the entry of an order by this Court creating a Victims' Compensation Fund, shall make a preliminary determination of which persons are aggrieved and an appropriate amount of damages that should be paid to each such persons.  The

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

13

Plaintiff will inform the Defendant in writing of its preliminary determinations, together with a copy of a sworn declaration from each aggrieved person setting forth the factual basis of the claim.  The Defendant shall have fourteen (14) days to review the declaration and to provide to the Plaintiff any documents or information that it believes may refute the claim.

h.  After receiving the Defendant's refutation, if any, the Plaintiff shall submit its final recommendations to the Court for approval, together with a copy of the declarations and any additional information submitted by the Defendant.  When the Court issues an order approving or changing the Plaintiff's proposed distribution of funds for aggrieved persons, the Defendants shall, within ten (10) days of the Court's order, deliver to the Plaintiff checks payable to the aggrieved persons in the amounts approved by the Court.  In no event shall the aggregate of all such checks exceed the sum of the Victims' Compensation Fund, including accrued interest and after deducting compensation to the Plaintiff as described above.  No aggrieved persons shall be paid until he or she has executed and delivered to counsel for the Plaintiff a signed and notarized statement releasing the Defendant from all claims related to the subject property.

i.  In the event that less than the total amount in the fund including interest is distributed to aggrieved persons, the remaining funds shall be submitted to an education fund to be drawn upon by the Plaintiff and other non-profit organizations for purposes of educating housing consumers and providers on the requirements of the Fair Housing Act.  Said education fund shall be administered by Idaho Legal Aid Services, Inc..

VERIFIED COMPLAINT AND                    14
DEMAND FOR JURY TRIAL

j.   The Defendant shall permit the Plaintiff, upon reasonable notice, to review any records that may facilitate its determinations regarding the claims of allegedly aggrieved persons.

51.   The Court should award to the Plaintiff and against the Defendant punitive damages due to the intentional, willful and reckless nature of the Defendant's conduct in an amount to be determined.

52.   The Court should enjoin the Defendant, its officers, employees, agents, successors, and all other persons in active concert or participation with said Defendant, from failing or refusing to comply with all requirements of the FHA and its implementing regulations.

53.   The Court should award to the Plaintiff and against the Defendant reasonable attorney's fees and costs incurred in this action, as provided for by statute and court rule.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, the Plaintiff Intermountain Fair Housing Council prays that the Court enter judgment against the Defendant as follows:

A.   That the Court find and declare that the actions of the Defendant constitute violations of the Fair Housing Act;

B.   That the Court award to the Plaintiff and against the Defendant actual damages in compensation for its out-of-pocket expenses and past diversion of resources in the amount of $9,511.06, which continue to accrue;

C.   That the Court award to the Plaintiff and against the Defendant actual damages in compensation for the necessary future diversion of the Plaintiff's resources in the amount of $5,500.00;

VERIFIED COMPLAINT AND                    15
DEMAND FOR JURY TRIAL

D.  That the Court award to the Plaintiff and against the Defendant actual damages in compensation for the Plaintiff's lost economic opportunity in the amount of $1,000.00;

E.  That the Court award to the Plaintiff and against the Defendant actual damages in compensation for the frustration of the Plaintiff's mission in the amount of $5,757.63;

F.  That the Court enter an order establishing a Victims' Compensation Fund in an amount to be determined and to be administered according to the terms set forth in Paragraph 50 above;

G.  That the Court award to the Plaintiff and against the Defendant punitive damages due to the reckless or callous nature of the Defendant's conduct in an amount to be determined;

H.  That the Court enjoin the Defendant, its officers, employees, agents, successors, and all other persons in active concert or participation with said Defendant, from failing or refusing to comply with all requirements of the FHA and its implementing regulations;

I.  That the Court award to the Plaintiff and against the Defendant reasonable attorney's fees and costs incurred in this action;

J.  That the Court order any further and additional relief as the interests of justice may require.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, the Plaintiff demands a trial by jury on all issues.

DATED this ___17th___ day of _____June_____, 2011.


_____/s/_____
KEN NAGY
ATTORNEY FOR PLAINTIFF

VERIFIED COMPLAINT AND                 16
DEMAND FOR JURY TRIAL

RICHARD MABBUTT, being first duly sworn on his oath, deposes and says:

I am the Executive Director of the Intermountain Fair Housing Council, Inc., the Plaintiff herein, that I have read the foregoing document, know well the contents thereof, and that the facts therein stated are true to the best of my knowledge and belief.

/s/

RICHARD MABBUTT

STATE OF I D A H O   )
                     : ss
County of __Latah__   )

I, __Ken Nagy_____, a Notary Public for said state, does hereby certify that on the __14th__ day of __June_____, 2011, personally appeared before me RICHARD MABBUTT, Executive Director of the Intermountain Fair Housing Council, Inc., who, being by me first duly sworn, declared that he signed the foregoing document as such, and that the statements therein contained are true and accurate as he verily believes.

SEAL

Ken Nagy
Notary Public
State of Idaho

/s/

Notary Public in and for the State of __Idaho__
Residing at: __Genesee, Idaho__
My commission expires: __8/31/13__

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

KEN NAGY
Attorney at Law
Lewiston, Idaho

## APPENDIX A:

## PLAINTIFF'S MEMORANDUM OF DAMAGES

The Plaintiff has identified four categories of damages that it has suffered as the result of the Defendant's failure to comply with the FHA.  These categories are: (1)  Past Diversion of Resources; (2) Future Diversion of Resources; (3) Lost Economic Opportunity; and (4) Frustration of Mission.  Each of these categories of damages have been recognized and awarded by various courts to organizational plaintiffs in previous fair housing cases.[1]

The following represents an itemization of the Plaintiff's damages:

### 1.  Out-of-Pocket Expenses and Past Diversion of Resources

The Plaintiff has incurred significant pre-litigation expenses as a result of the Defendant's discriminatory actions, which are constituted by its out-of-pocket expenses and its past diversion of resources.  The Plaintiff has sponsored training workshops in the Defendant's geographic area, and has engaged in site monitoring, investigation, complaint preparation,

---

[1]*See, Southern Cal. Housing Rights Center v. Krug*, 564 F.Supp.2d 1138 (Cent. Dist. Cal. 2007) (fair housing organization awarded $6,590.80 for diversion of resources and $29,065.32 for frustration of mission), *Fair Housing of Marin v. Combs*, 285 F.3d 899 (9th Cir. 2002) (fair housing organization awarded $14,217.00 for the diversion of resources); *HUD v. Perland*, Fair Housing-Fair Lending Rptr. ¶25,136 (HUD ALJ 1998) (fair housing organization awarded $4,516 for the diversion of resources and $1,400 for the costs of future monitoring of the defendants); *Ragin v. Harry Macklowe Real Estate Co.*, 801 F.Supp. 1213, *aff'd in pertinent part*, 908 F.3d 898 (2nd Cir. 1993) (fair housing organization awarded $20,000 for the diversion of resources); *HUD v. Jancik*, Fair Housing-Fair Lending Rptr. ¶25,058 (HUD ALJ 1993) (fair housing organization awarded $13,386 for the diversion of past and future resources and $9,000 for the financial opportunity lost as a result of the investigation and litigation of the case); *City of Chicago v. Matchmaker Real Estate Sales Center, Inc.*, 982 F.2d 1086 (7th Cir. 1992) (fair housing organization awarded $16,500 for out-of-pocket expenses and costs of future monitoring and training); *Saunders v. General Services Corp.*, 659 F.Supp. 1042 (E.D. Va. 1987) (fair housing organization awarded $2,300 for the diversion of resources and $10,000 for the frustration of its equal housing mission).

counseling and other activities with regards to this matter.  As a result of these activities, it

has incurred expenses as follows:

    a.   Investigation and Counseling Costs:             $1,595.43

    b.   Educational Efforts:             $3,162.20

    c.   Attorney's Fees and Costs (to date):      $3,158.00

    d.   <u>Cost of Deferred Actions:                  $1,593.43</u>

          Total Past Diversion of Resources:   $9,511.06

Further litigation of these matters will result in an increase in the Plaintiff's diversion of

resources, as well as other damages.

### 2.  Future Diversion of Resources

The Plaintiff has an affirmative duty to ensure the Defendant's ongoing compliance with

the FHA, with regards to both the subject property as well as any future developments in which

the Defendant may participate.  Such monitoring activities include site visits, training of

Defendant and its employees and agents, counseling of victims, and testing.

The Plaintiff expects to incur the following expenses as a result of the current violations:

    a.  Future Advertising Costs:            $2,500.00

    b.  Cost of Future Training:            $2,500.00

    <u>c. Costs of Future Monitoring/Testing:        $500.00</u>

         Total Future Diversion of Resources:   $5,500.00

### 3.  Lost Economic Opportunity

Vigorous investigation and enforcement of fair housing complaints, including the

property at issue herein, has caused the Plaintiff to divert limited resources and manpower away

from grant-writing activities.  The Plaintiff could reasonably expect to have obtained funding to

VERIFIED COMPLAINT AND          19
DEMAND FOR JURY TRIAL

sponsor fair housing training events in the amount of $1,000.00 if it had not been so diverted due to the Defendant's actions

    a.  Loss of Funding:                                  $1,000.00

**4.  Frustration of Mission**

The investigation of the subject of this complaint, the counseling and training provided to the community, and the preparation of the administrative complaint have caused the Plaintiff to divert significant resources toward this proceeding and has undermined the work of furthering fair housing in the state of Idaho.

As a direct result of the Defendant's discriminatory actions, the Plaintiff's mission of furthering fair housing has been significantly frustrated, and the Plaintiff has had to devote, and will continue to devote, additional resources in order to counteract the past and ongoing effects of this discrimination.

Furthermore, the property at issue in this proceeding has constituted a formidable barrier to non-discriminatory housing, thereby undermining the mission of the Plaintiff in guaranteeing fair housing to all residents of the state.  The Plaintiff has determined that it will be necessary to educate housing consumers regarding fair housing requirements in order to counteract the effects of the Defendant's failure to comply with the FHA.

The Plaintiff measures the damage to its frustration as the total monetary damages that the Defendants' actions have cost to correct, including lost funding opportunities.

    a.  Frustration of Mission                             $5,757.63

## TOTAL DAMAGES

The Council calculates its total damages in this proceeding as follows:

    1.  Out-of Pocket Expenses and Past Diversion of Resources:     $9,511.06

VERIFIED COMPLAINT AND           20
DEMAND FOR JURY TRIAL

2.  Future Diversion of Resources:                    $5,500.00

3.  Lost Economic Opportunity:                        $1,000.00

4.  Frustration of Mission:                           $5,757.63

                              Total Damages:     $21,768.69

**KEN NAGY**
**Attorney at Law**
Lewiston, Idaho